CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
----------------------------------------------------------------x
                                                :
In re:                                          :   Chapter 11
                                                :
COLLAVINO CONSTRUCTION COMPANY INC.  :   Case No. 14-12908 (SCC)
                                                :
                                                :
                    Debtor.                     :
                                                :
----------------------------------------------------------------x
```

## MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER
## PURSUANT TO SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY CODE
## ENFORCING THE AUTOMATIC STAY AS TO A PENDING STATE COURT ACTION

Collavino Construction Company Inc., the above-captioned debtor and debtor-in-possession (the "Debtor" or "CCCI"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to sections 105(a) and 362(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (i) enforcing the automatic stay as the pending New Jersey Action (defined below), and (ii) imposing sanctions on the Port Authority Defendants (defined below) for continuing the prosecution of the New Jersey Action (defined below) in violation of the automatic stay. In support of this Motion, the Debtor respectfully states as follows:

## INTRODUCTION

1.      On October 17, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.      The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.      No request for the appointment of a trustee or examiner has been made.  An official committee of unsecured creditors has not yet been appointed by the Office of the United States Trustee for the Southern District of New York in this chapter 11 case.

4.      Simultaneously with the filing of its petition, the Debtor filed the Affidavit of Renzo Collavino pursuant to Local Bankruptcy Rule 1007-2 (the "Collavino Affidavit") (Docket No. 2).  A more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Collavino Affidavit and incorporated herein by reference.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.      The statutory predicates for the relief sought herein are sections 105 and 362(a) of the Bankruptcy Code.

## BACKGROUND

7.      An action was commenced by Triboro Hardware & Industrial Supply Corp. ("Triboro") as against Collavino Construction Company, Inc. ("CCCI") by Complaint duly filed

on November 8, 2013 in the Superior Court of New Jersey, County of Hudson, under Docket No. HUD-L-5272-13 (the "New Jersey Action").

8.      On January 8, 2014, Triboro filed an Amended Complaint against CCCI, The Port Authority of New York and New Jersey, Tishman Construction Corp., 1 WTC Holdings LLC, a/k/a 1 World Trade Center, LLC and Tower 5 LLC (the "Amended Complaint").

9.      CCCI filed an *Answer to Amended Complaint, Affirmative Defenses and Cross-Claims of Defendant Collavino Construction Co. Inc.* dated February 14, 2014 (the "CCCI Answer"), a copy of which is annexed hereto as <u>Exhibit 1</u>.

10.     In the CCCI Answer, CCCI asserted five cross-claims against each defendant 1 World Trade Center, LLC ("1 WTC"), 1 WTC Holdings, LLC ("1 WTC Holdings"), and Tower 5, LLC ("Tower 5") (collectively, "Cross-Claim Defendants").

11.     CCCI's first through fourth cross claims against the Cross-Claim Defendants in the CCCI Answer are based upon the WTC Contract (as defined therein).  *See* Ex. 1, ¶¶ 11-39 and Fifth Count ¶¶ 1-6.

12.     On or about March 20, 2014, the Port Authority of New York and New Jersey, 1 WTC Holdings, and Tower 5 (collectively, the "Port Authority Defendants") filed  an *Answer and Defenses to the Amended Complaint of Defendants the Port Authority of New York and New Jersey, 1 WTC Holdings, LLC, and Tower 5 LLC* (the "Port Authority Defendants' Answer"), a copy of which is annexed hereto as <u>Exhibit 2</u>.

13.     As part of their answer, the Port Authority Defendants asserted a cross-claim against CCCI, asserting that CCCI "must indemnify Defendants from all loss or liability, including attorneys' fees and defense costs arising from the instant litigation, pursuant to the express terms of the contract [WTC Contract] . . . .which provide that [Collavino] shall

3

indemnify the Authority against any claim of any kind whatsoever made against the Authority by a …vendor of construction materials, and [Collavino] assumes the risk of all claims against [it] by any...vendor of construction materials" (the "Indemnity Claim") *See* Ex. 2 at 9.

14.    After the filing of the Amended Complaint, the CCCI Answer and the Port Authority Defendant's Answer, the parties did not conduct any discovery regarding the various theories asserted in support of the parties' respective claims and cross-claims in the New Jersey Action.

15.    On or about September 2, 2014, the Port Authority Defendants filed a *Notice of Motion for Summary Judgment and Motion to Dismiss for Failure to Comply with a Condition Precedent to Suit* (the "MSJ"), a copy of which is annexed (without exhibits) hereto as Exhibit 3. Pursuant to the MSJ, among other things, the Port Authority Defendants are seeking (i) the dismissal of Amended Complaint with prejudice; (ii) the dismissal of CCCI's cross-claims against the Port Authority and Tower 5 with prejudice; and (iii) dismissing CCCI's cross claims against 1 WTC without prejudice for failure to comply with a condition precedent to suit.   *See* Ex. 3.

16.    The court in the New Jersey Action originally scheduled oral argument on the Port Authority Defendant's MSJ for October 10, 2014 which date was subsequently adjourned upon consent of all parties to November 7, 2014.

17.    On October 24, 2014, counsel to Triboro and state court counsel to CCCI each sent a letter to the court in the New Jersey Action informing the court of CCCI's bankruptcy filing and the imposition of the automatic stay upon the New Jersey Action.   Counsel to the Port Authority Defendants was timely served with copies of the October 24, 2014 letters.  Copies of these letters are annexed hereto as Exhibits 4 and 5, respectively.

18.    On October 27, 2014, counsel to the Port Authority Defendants sent a letter to the court in the New Jersey Action asserting, among other things, that the provisions of section 362 of the Bankruptcy Code did not apply to Triboro's claims, or CCCI's cross claims, against the Port Authority Defendant's in the New Jersey Action.   In support of its October 27, 2014 letter, the Port Authority's cited to the Third Circuit cases of, *Mar. Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204-05 (3d Cir. 1991) and also *Boone v. Beacon Bldg. Corp.*, 613 F. Supp. 1151, 1155 (D.N.J. 1985).  A copy of this letter is annexed hereto as <u>Exhibit 6</u>.

19.    On October 29, 2014, Cullen and Dykman LLP ("C&D"), as proposed counsel to the Debtor in this pending chapter 11 bankruptcy case, sent a letter to the state court in the New Jersey Action pursuant to which C&D asserted that the provisions of the automatic stay applied to the New Jersey Action under relevant case law and requested that the court stay the New Jersey Action.  A copy of this letter is annexed hereto as <u>Exhibit 7</u>.

20.    Alternatively, in the October 29, 2014 letter, C&D requested a brief two week adjournment of the November 7, 2014 hearing date for the Port Authority Defendant's MSJ to enable the Debtor to retain counsel and/or make the appropriate motions before the bankruptcy court regarding the enforcement of the automatic stay in the New Jersey Action.  *See* Ex. 7.

21.    That same day, counsel for the Port Authority Defendants sent another letter brief to the state court in the New Jersey Action in which the Port Authority Defendants again asserted that the provisions of the automatic stay did not apply to the various claims and cross claims in the New Jersey Action that were subject to the Port Authority Defendants' MSJ, while conceding that the automatic stay does apply to its Indemnity Claim.   A copy of this letter is annexed hereto as <u>Exhibit 8</u>.

22.     On October 30, 2014, C&D received a call from the law clerk for the state court judge in the New Jersey Action.   Among other things, the law clerk informed C&D that the state court judge would not agree to adjourn the November 7, 2014 hearing on the Port Authority Defendants' MSJ because the state court judge asserted that the provisions of the automatic stay did not apply to the New Jersey Action.   The judge's law clerk also informed C&D that because of the "extraordinary circumstance" of CCCI's bankruptcy, C&D would be given until October 31, 2014, the next day, to file CCCI's opposition papers to the Port Authority Defendants' MSJ.

23.     On October 31, 2014, CCCI submitted a letter to the New Jersey state court restating its opposition to the MSJ on the grounds that the claims at issue therein are stayed by the operation of section 362(a) of the Bankruptcy Code and once again requesting that the state court not proceed with the scheduled hearing on the MSJ.   A copy of this letter is annexed hereto as <u>Exhibit 9</u>.

24.     Due to the procedural posture in the New Jersey Action, including the refusal of the New Jersey state court to recognize the application of the automatic stay to the various claims and cross-claims at issue in the New Jersey Action and the requirement that the parties proceed with submitting their responses to the Port Authority Defendants' MSJ, the Debtor is constrained to submit this Motion to the Court by order to show cause seeking the enforcement of the automatic stay in the New Jersey Action in its entirety.

**<u>RELIEF REQUESTED</u>**

25.     By this Motion, the Debtor requests entry of an Order substantially in the form annexed hereto (i) enforcing the automatic stay imposed by section 362(a) as to the New Jersey Action in its entirety, and (ii) imposing sanctions on the Port Authority Defendants for continuing the prosecution of the New Jersey Action in violation of the automatic stay, including

6

by requiring the Port Authority Defendants to pay the reasonable attorneys' fees incurred by the

Debtor in connection with this Motion.

### THE AUTOMATIC STAY MUST BE ENFORCED TO BAR THE CONTINUATION OF THE NEW JERSEY ACTION IN ITS ENTIRETY

26.     The Debtor submits that the New Jersey Action, in which the Debtor is a named

defendant, is subject to the automatic stay in its entirety because (i) the Indemnity Claim asserted

by the Port Authority Defendants against the Debtor converts the New Jersey Action into an

"action or proceeding against the Debtor" within the meaning of section 362(a)(1) of the

Bankruptcy Code, (ii) the Indemnity Claim asserts a contractual indemnification claim which

constitutes an affirmative act seeking to deplete property of the estate in violation of section

362(a)(3) of the Bankruptcy Code, (iii) the nature of the Indemnity Claim impacts the entire New

Jersey Action such that the various claims at issue cannot be separated, and (iv) resolution of the

MSJ requires consideration of the Port Authority Defendants' stayed contractual Indemnity

Claim and construction of the WTC Contract which underlies the cross-claims and the Amended

Complaint sought to be dismissed.

I.     **The Assertion of the Indemnity Claim is an Offensive Claim Against the Debtor That Converts the New Jersey Action Into an Action or Proceeding That is Barred by Section 362(a)(1) of the Bankruptcy Code**

27.     Pursuant to section 362(a)(1) of the Bankruptcy Code, the filing of a bankruptcy

petition is an automatic stay, "applicable to all entities," of "the commencement or continuation .

. . of a judicial, administrative, or other action or proceeding against the debtor that was or could

have been commenced before the commencement of the case under this title, or to recover a

claim against the debtor that arose before the commencement of the case under this title."  11

U.S.C. § 362(a)(1).

28.    By its very terms, the automatic stay applies only to actions or proceedings "against the debtor" and not to lawsuits initiated by the debtor.  *See* 11 U.S.C. § 362(a)(1). Accordingly, in determining whether the automatic stay applies to a certain action, courts typically begin their analysis by reviewing the posture of a litigation at its inception.  *See Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994); *In re Enron Corp.*, 2003 Bankr. LEXIS 2261, at *11 (Bankr. S.D.N.Y. Jan. 13, 2003).   Here, it is undisputed that Triboro's claims for relief against the Debtor in the New Jersey Action are stayed.

29.    However, given that defendants may assert counterclaims and various other claims for affirmative relief in the context of a single action, the inquiry requires consideration of the facts and circumstances surrounding a particular action and the claims asserted therein. For this reason, the Second Circuit construes the term "action or proceeding" for purposes of the automatic stay analysis "to include any pleading that asserts a claim on which relief is sought". *Koolik*, 40 F.3d at 568; *Eastman Kodak Co. v. Collins Ink Corp.*, 2012 U.S. Dist. LEXIS 65881, at *5 (W.D.N.Y. May 10, 2012); *Enron*, 2003 Bankr. LEXIS 2261, at *12.

30.    It is well settled within the Second Circuit that "counterclaims for affirmative relief implicate the automatic stay." *In re Enron Corp.*, 2003 Bankr. LEXIS 2261, at *11 (Bankr. S.D.N.Y. Jan. 13, 2003).  Here, the Port Authority Defendants' Indemnity Claim asserted in the Port Authority Defendants' Answer against the Debtor clearly constitutes a claim on which affirmative relief is sought against the Debtor.  For purposes of this analysis, the Indemnity Claim asserted by the Port Authority Defendants should be treated the same as a counterclaim because it was lodged against the Debtor in connection with the Port Authority Defendants' response to the claims asserted against it by Triboro and the Debtor.  The Indemnity Claim is not

merely a defense to the Debtor's claim, but rather seeks affirmative relief. Therefore, under

prevailing Second Circuit law, the Indemnity Claim is subject to the automatic stay, as follows:

> [S]ince a defendant who is awarded judgment on a counterclaim is no less a
> judgment creditor than is a plaintiff who is awarded judgment on a claim asserted
> in the complaint, we construe the term 'action or proceeding,' for purposes of §
> 362(a)(1), **to include any pleading that asserts a claim on which relief is
> sought**. **Thus, an answer that asserts a counterclaim against a plaintiff who
> becomes a bankruptcy debtor is an 'action or proceeding against the debtor'
> within the meaning of § 362(a)(1), notwithstanding the fact that the plaintiff
> initiated the lawsuit.**

*Id.* at *11-12 (quoting *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994)) (emphasis added).

31.     Therefore, like the counterclaims described in the case law, the Indemnity Claim

constitutes an affirmative and offensive claim against the Debtor for money damages and

triggers the application of the automatic stay to the New Jersey Action.

**II.     The Indemnity Claim Affects the Entire New Jersey Action Such That the
Particular Claims Cannot be Separated for Purposes of the Automatic Stay
Analysis**

32.     While the Debtor acknowledges that there is case law which stands for the

proposition that in multi-party actions, multiple claims should be disaggregated so that they are

treated independently for purposes of the automatic stay analysis, *see Enron*, 2003 Bankr. LEXIS

2261, at *11 (citing *Mar. Elec. Co.*, 959 F.2d 1194 at 1204), the claims and cross-claims at issue

in the New Jersey Action cannot be parsed out and separated because the Debtor's cross-claims

against certain of the Port Authority Defendants and the Port Authority Defendants' Indemnity

Claim against the Debtor both arise out of the same underlying contract – here, the WTC

Contract – and underlying facts.

33.     Accordingly, although the automatic stay traditionally applies, by its very terms,

only to actions against the debtor, *see Justus v. Fin. News Network Inc.* (*In re Financial News

Network Inc.*), 158 B.R. 570, 572 (Bankr. S.D.N.Y. 1993), in circumstances where the claims by

and against a debtor are so intertwined that they cannot be easily parsed, the automatic stay has been held to extend to all claims in a particular action. *See OCA, Inc. v. Johnstown Orthodontic Specialists, Inc.*, 2006 U.S. Dist. LEXIS 68551, at *6 (W.D. Pa. Sept. 25, 2006) (stating that "parallel proceedings interpreting the same instrument will frustrate the bankruptcy proceeding § 362 was meant to protect" and holding that "the automatic stay in this litigation reaches all the claims at issue, whether made by or against [the debtor]").

34.    The *OCA* court distinguished cases where the claims, cross-claims and counterclaims at issue did not involve the interpretation of a single contract or one set of operative facts, finding that in such instance the resolution of claims could proceed without affecting the assets relevant to a parallel bankruptcy proceeding. *Id.* In *OCA*, on the other hand, like here, all of the claims in the subject action involved a business service agreement, which agreement was "the central component of [the debtor's] principal asset", and the resolution of the claims and counterclaims depended on the construction of that instrument. *Id.* at *5.

35.    Similarly, in the New Jersey Action, Triboro's claims against the Debtor, the Debtor's cross-claims against certain of the Port Authority Defendants, and the Port Authority Defendants' Indemnity Claim against the Debtor all arise out of the WTC Contract and the same set of underlying facts. Accordingly, in the New Jersey Action, like in *OCA*, "to allow one set of claims to proceed while staying the other set of claims would be to disrupt the bankruptcy proceeding in contravention of § 362". *Id.* Moreover, to the extent that the continued prosecution of the portions of the New Jersey Action that do not involve claims *against the debtor* resulted in a judgment that became subject to a later appeal, the appellate court would be required to consider issues subject to the stay. *See Robert Tyer and Assocs., Inc. v. Environ. Dynamics, Inc.*, 1995 U.S. App. LEXIS 22215, at *5 (Fed. Cir. July 14, 1995) (staying entire

appeal where claims against the debtor were substantially similar to other pending claims).  In that circumstance, the *Tyer* court "question[ed] whether judicial economy would be served by [appellant's] suggested piecemeal approach." *Id.* at *4.

36.     Instead, to avoid the risk of having to stay an action at a later appellate level due to a change in the procedural posture and alignment of the parties, all claims that "arise out of" a proceeding brought "against the debtor" should be subject to the automatic stay.  *See Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446, 449 (3d Cir. 1982) (staying appeals brought by and against the debtor because "the disruption of the administration of the bankruptcy estate that would be caused by the [non-debtor's] success in its cross-appeal is precisely the result section 362 was designed to prevent"); *see also Teachers Ins. and Annuity Assoc. of America v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986) (applying automatic stay to non-debtor's appeal from an action originally brought by the debtor against the non-debtor).

37.     Consistent with the broad scope of section 362 of the Bankruptcy Code, and given the nature of the Indemnity Claim, the Debtor could not continue to pursue its claims against the Port Authority Defendants because doing so would require the Port Authority Defendants to defend themselves thus increasing the amount of the alleged Indemnity Claim against the Debtor's estate.  Since the Port Authority Defendants are seeking contractual indemnification from the Debtor for all of their lossess, attorneys' fees and defense costs in connection with the New Jersey Action, the Indemnity Claim affects the character of the entire New Jersey Action.  Therefore, anything involving the Port Authority Defendants' actions in that regard – either offensively or defensively – has a global impact on the Debtor and its bankruptcy estate.  For this reason, among others, the Debtor has not and cannot pursue its cross-claims against certain of the Port Authority Defendants.

38.    Permitting such erosion of assets to occur in the time before the Debtor can accomplish the purpose of its chapter 11 case, namely, the reorganization of its business and resolution of the WTC Claim without the distraction of ancillary lawsuits, would undermine the entire purpose for which the Debtor sought relief under the Bankruptcy Code. *See id.* (the Second Circuit in *Teachers* observed that "[t]he stay is designed to give the debtor time to organize its affairs – which includes protection from having to defend claims brought against the estate as well as continuing to pursue judicial proceedings on its own behalf" because although "the latter is within the debtor's control, it may distract a debtor's attention from its primary goal of reorganizing"). The Debtor submits that, under these circumstances, the automatic stay of section 362 of the Bankruptcy Code clearly applies to the New Jersey Action it its entirety because the Indemnity Claim has a global impact on the Debtor's estate.

### III.    The Indemnity Claim Asserts an Affirmative Indemnification Claim Against the Debtor Which Impacts Property of the Estate and is Barred By Section 362(a)(3) of the Bankruptcy Code

39.    Not only should the entire New Jersey Action be stayed because the Debtor's and the Port Authority Defendants' cross-claims involve the same underlying contract and operative facts, but also because the Port Authority Defendants' Indemnity Claim provides payment of all lossess, attorneys' fees and defense costs and would clearly have an adverse impact on the Debtor's bankruptcy estate since the Port Authority would be seeking payment of its Indemnity Claim from the Debtor.

40.    Section 362(a)(3) of the Bankruptcy Code also stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate". 11 U.S.C. §362(a)(3). Section 541(a)(1) provides that the "estate is comprised of . . . all

legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

41.    If allowed to go forward with its MSJ on the claims asserted by the Debtor and Triboro, the Port Authority Defendants would be required to incur attorneys' fees which would form a part of the damages that the Port Authority Defendants allege would be recoverable against the Debtor as part of their Indemnity Claim and would result in the depletion of the Debtor's estate.  *See Eastman Kodak Co. v. Collins Ink Corp.*, 2012 U.S. Dist. LEXIS 65881 (W.D.N.Y. May 10, 2012) (denying motion to compel debtor to comply with certain contractual provisions because, among other reasons, "if [non-debtor] prevails, it intends to request money damages in the form of an award of attorneys' fees and costs, which would diminish the bankrupt estate's assets and thus frustrate the primary purpose of the automatic stay"); *see also Miller v. Miller*, 397 F.3d 726, 732 (9th Cir. 2005) (holding that a request for attorneys' fees which stemmed from a counterclaim against a debtor constituted a "continuation of an action or proceeding" to which the automatic stay applied notwithstanding the fact that the debtor "fired the first shot" prepetition by filing a claim).

42.    Accordingly, because any further action on the part of the Port Authority Defendants in connection with any of the claims at issue in the New Jersey Action would only increase the size of the alleged Indemnity Claim, and therefore the potential diminution of the Debtor's estate, the Debtor submits that the New Jersey Action must be stayed.  It is well settled that actions against non-debtors which implicate estate indemnification obligations are subject to the automatic stay where "a claim against the non-debtor will have an immediate adverse economic consequence on the debtor's estate."  *See Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) (setting forth examples of when the automatic stay will apply to a claim

13

against a non-debtor including "a claim to establish an obligation of which the debtor is a guarantor" and holding that the stay applied to the debtor's wholly owned non-debtor entity); *see also McCartney v. Integra Nat'l Bank North*, 106 F.3d 506, 511 (9th Cir. 1997) (extending the automatic stay to enjoin non-debtor from pursuing deficiency judgment action against a non-debtor third party because the debtor was a guarantor to non-debtor third party and any deficiency judgment would have necessarily impacted its estate); *Motylinski v. Glacial Energy (V.I.), LLC*, 2014 U.S. Dist. LEXIS 98556 (Dist. V.I. July 21, 2014) (staying proceeding in its entirety because debtor-defendant was contractually obligated to defend non-debtor co-defendant against "any liability, legal fees, and costs arising out of these proceedings" such that "'allowing the suit to proceed against the [non-debtor] would, in effect, be allowing the suit to proceed against the bankrupt debtor'" (internal citations omitted)).[1]

43.    The Debtor's alleged liability under the contractual indemnity asserted in the Port Authority Defendants' Indemnity Claim for, among other things, all losses, defense costs, including attorneys' fees, incurred by the Port Authority Defendants in the New Jersey Action, whether against Triboro or the Debtor, is analogous to the guaranty obligations described above. Here, the Port Authority Defendants seek to make the Debtor liable for their costs incurred in connection with the pursuit of any and all of its claims in the New Jersey Action, including its claims against Triboro and the prosecution of the MSJ.  Accordingly, the Debtor would be subject to economic injury to the extent that the Port Authority Defendants were authorized to continue prosecuting the New Jersey Action in any regard because any amounts that the Debtor

---

[1] The Port Authority Defendants' reliance on the New Jersey district court's decision in *Boone* is misplaced because the co-defendant debtor's cross-claims for contribution and indemnification against the Town in *Boone* were not "contractual" in nature, as expressly recognized by the court, and would not, even if valid, generally encompass indemnification for attorney's fees and litigation costs. *See Boone v. Beacon Bldg. Corp.*, 613 F. Supp. 1151, 1155 (D. N.J. 1985).  Accordingly, the *Boone* decision has no bearing on the issues relating to the applicability of the automatic stay to the New Jersey Action.

14

would ultimately be required to repay would necessarily be satisfied by funds that constitute property of the estate.

44.     Therefore, allowing the Port Authority Defendants to continue to pursue the MSJ and increase the size of the Indemnity Claim while all other prepetition claims against the Debtor are automatically stayed under section 362 of the Bankruptcy Court would have the effect of depleting property of the Debtor's estate to the detriment of its other unsecured creditors, thus offering the Port Authority Defendants "a benefit not otherwise available to [the Debtor's] other creditors in violation of the automatic stay."  *See Enron*, 2003 Bankr. LEXIS 2261 at *26. Accordingly, the Debtor submits that the New Jersey Action must be stayed in its entirety because any conduct by the Port Authority Defendants would expose the Debtor to adverse economic consequences relating to the alleged Indemnity Claim.

## IV.     Continuation of the New Jersey Action Against the Debtor Would be Unduly Prejudicial to the Debtor During the Early Stages of its Chapter 11 Case

45.     Moreover, the Debtor submits that the New Jersey Action must be stayed because, at this early stage in its chapter 11 case, the Debtor has not yet had an opportunity to fully evaluate any claims that the estate may hold against the Port Authority Defendants and requires additional time to obtain a better understanding of the consequences to its estate if and to the extent the Port Authority Defendants would be able to succeed in dismissing the Debtor's cross-claims with prejudice.  Therefore, consistent with the fundamental purpose of the automatic stay, the Debtor requests that this Court afford it the "breathing spell" to which it is entitled so that it may better assess any substantive rights that it may hold against the Port Authority Defendants, which rights would constitute "property of the estate".

46.     The automatic stay is the cornerstone of the fundamental debtor protections in a chapter 11 reorganization case.  *See In re Enron Corp.*, 2003 Bankr. LEXIS 2261, at *9 (Bankr.

15

S.D.N.Y. Jan. 13, 2003) (explaining the breadth of the automatic stay in order to effectuate its

protective purposes and quoting *In re Keene Corp.* for the proposition that the automatic stay "is

particularly important in maintaining the status quo and permitting the debtor in possession or

trustee to formulate a plan of reorganization" because "[w]ithout the stay, the debtor's assets

might well be dismembered, and its business destroyed, before the debtor has an opportunity to

put forward a plan for future operations" (citing *Keene Corp. v. Coleman* (*In re Keene Corp.*),

164 B.R. 844, 849 (Bankr. S.D.N.Y. 1994))); *Justus v. Fin. News Network Inc.* (*In re Financial

News Network Inc.*), 158 B.R. 570, 573 (Bankr. S.D.N.Y. 1993) ("The principal policy behind

the automatic stay of section 362 is 'to protect the bankrupt's estate from being eaten away by

creditors' lawsuits and seizures of property before the trustee has had an chance to marshal the

estate's assets and distribute them equitably among creditors'" (internal citations omitted)).

47.    Here, two weeks into this chapter 11 case which was filed primarily to afford the

Debtor a "breathing spell" from pending state court litigations arising out of the nonpayment of

amounts ultimately owed by one or more of the Port Authority Defendants on the WTC Claim,

the defense of which has hampered its business operations, the Port Authority Defendants are

attempting to force the Debtor to defend against an affirmative claim for money damages,

requiring for resolution construction of the underlying WTC Contract involving all claims in the

New Jersey Action including those conceded by the Port Authority Defendants to be stayed by

section 362 of the Bankruptcy Code.

48.    At this very early stage in the Debtor's chapter 11 case, the Debtor submits that

the continuation of the New Jersey Action would be unduly prejudicial to the Debtor and its

estate and runs afoul of the primary purpose of the automatic stay.  The Debtor is still in the

process of evaluating the nature and extent of its estate, including whether it holds direct claims

against the Port Authority Defendants arising out of the WTC Contract.  Accordingly, forcing the

Debtor to defend the New Jersey Action without sufficient time to prepare a response to the Port

Authority Defendants' MSJ on the Debtor's cross-claims and request for dismissal of such

claims *with prejudice* would be highly prejudicial to the Debtor, as the Debtor does not yet

understand the full impact that such a finding would have on any substantive rights held by the

estate.  Staying the New Jersey Action during the pendency of the Debtor's chapter 11 case, on

the other hand, would not affect any prejudice on the other parties to the New Jersey Action.

Therefore, the Debtor submits that enforcement of the automatic stay as to the New Jersey

Action, in its entirety, is warranted under the circumstances.

### THE PORT AUTHORITY DEFENDANTS SHOULD BE SANCTIONED FOR THE CONTINUED PROSECUTION OF THE NEW JERSEY ACTION IN VIOLATION OF THE AUTOMATIC STAY

49.    Section 105(a) of the Bankruptcy Code grants bankruptcy courts the authority to

issue "any order, process or judgment that is necessary or appropriate to carry out the provisions

of this title".  11 U.S.C. § 105(a).  The Debtor submits that the Port Authority Defendants should

be subject to sanctions for their willful violation of the automatic stay because, as the letters

submitted to the Court in the New Jersey Action make clear, the Port Authority Defendants had

actual knowledge of the Debtor's pending bankruptcy case.

50.    Where the automatic stay is knowingly violated in deliberate disregard of the

Bankruptcy Code, the Court may impose actual damages incurred by the estate including

attorneys' fees.  *See Fidelity Mortgage Investors v. Camelia Builders Inc.*, 550 F.2d 47, 57 (2d

Cir. 1976).  The Port Authority Defendants' knowledge of the pending bankruptcy case is not in

dispute, as the Port Authority Defendants admit such knowledge in their letters to the New Jersey

state court.  Notwithstanding their knowledge of the pending chapter 11 case and the automatic

stay imposed therein, the Port Authority Defendants have sought to continue the prosecution of their MSJ without first requesting relief from the automatic stay from this Court. *See In re Steward*, 338 B.R. 654, 661 (Bankr. D. N.J. 2006) (awarding attorneys' fees and costs for a willful violation of the automatic stay where party moved in state court to remove executor from probate estate despite having actual knowledge of executor's pending bankruptcy without first seeking relief from the stay or asking the bankruptcy court to determine the applicability of the stay)  Accordingly, the Debtor requests that this Court assess monetary sanctions against the Port Authority Defendants for the attorneys' fees and other costs incurred by the Debtor's estate in connection with bringing this Motion to enforce its rights.

## CONCLUSION

51.    As discussed above, the Debtor believes that the facts of this case establish that the automatic stay applies to the New Jersey Action.

52.    No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the annexed Order granting the relief sought herein, together with such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
      November 3, 2014

                        CULLEN AND DYKMAN LLP

                        By: *s/  C. Nathan Dee*
                        Matthew G. Roseman, Esq.
                        C. Nathan Dee, Esq.
                        Elizabeth M. Aboulafia, Esq.
                        100 Quentin Roosevelt Boulevard
                        Garden City, NY  11530
                        (516) 357-3700
                        Proposed Counsel for the Debtor

## EXHIBIT "A"

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

 ----------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
COLLAVINO CONSTRUCTION COMPANY INC.  :   Case No. 14-12908 (SCC)
                                          :
                                          :
                  Debtor.                 :
                                          :
 ----------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105(a) AND 362(a) OF THE BANKRUPTCY CODE ENFORCING THE AUTOMATIC STAY AS TO A PENDING STATE COURT ACTION

Upon the motion (the "Motion")[1] filed by Collavino Construction Company Inc., the above-captioned debtor and debtor-in-possession (the "Debtor") ") pursuant to sections 105(a) and 362(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order (i) enforcing the automatic stay as to the New Jersey Action, and (ii) imposing sanctions on the Port Authority Defendants for continuing the prosecution of the New Jersey Action in violation of the automatic stay, and it appearing that the relief requested is in the best interest of the Debtor, its estate and creditors and that adequate notice has been given and that no further notice is necessary; and after due deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED,** that the Motion is GRANTED; and it is further

**ORDERED**, that the continuation of the New Jersey Action is a violation of the automatic stay imposed by section 362(a) of the Bankruptcy Code,

**ORDERED**, that the Port Authority Defendants are sanctioned for violating the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

automatic stay by continuing the prosecution of the New Jersey Action and by their attempts to

impact property of the Debtor's estate, and are directed to pay all of the Debtor's reasonable

attorneys' fees and other costs incurred by the Debtor's estate in connection with the Motion.


Dated: November ____, 2014
       New York, New York

_____
THE HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE