CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
COLLAVINO CONSTRUCTION COMPANY INC.                 :    Case No. 14-12908 (SCC)
                                                    :
                        Debtor.                     :
----------------------------------------------------------------x
COLLAVINO CONSTRUCTION COMPANY INC.                 :
                                                    :    Chapter 11
                        Plaintiff,                  :
                                                    :
        -against-                                   :    Adv. Proc. No. 14-_____ (SCC)
                                                    :
TRIBORO HARDWARE & INDUSTRIAL SUPPLY                :
CORP., THE PORT AUTHORITY OF NEW YORK               :
AND NEW JERSEY, 1 WTC HOLDINGS, LLC a/k/a 1         :
WORLD TRADE CENTER, LLC, TOWER 5 LLC, and           :
TISHMAN CONSTRUCTION CORP.                          :
                                                    :
----------------------------------------------------------------x

**COMPLAINT**

Collavino Construction Company Inc. (the "Debtor"), as plaintiff in this adversary

proceeding, by and through its undersigned attorneys, alleges for its complaint as follows:

**Introduction**

1. This is an adversary proceeding commenced by the Debtor for relief pursuant to Sections 105(a) and 362(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 65 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable herein by Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Bankruptcy Rule 7001(7) and (9), in the form of:

   (i) a declaratory judgment that the automatic stay of Section 362(a) of the Bankruptcy Code stays the continuation of the action styled *Triboro Hardware & Industrial Supply Corp. –against- Collavino Construction Company, Inc., Port Authority of New York and New Jersey, Tishman Construction Corp., 1 WTC Holdings, LLC a/k/a 1 World Trade Center, LLC and Tower 5, LLC* (Docket No. HUD-L-5272-13) (the "New Jersey Action"), filed in the Superior Court of New Jersey, County of Hudson on November 8, 2013, against all parties to the New Jersey Action (collectively, the "Protected Parties") solely for the claims subject to that action;

   (ii) injunctive relief regarding the New Jersey Action through either the effective date of the Debtor's plan of reorganization or the final adjudication of this adversary proceeding;

   (iii) sanctions against the PA Defendants (defined below) for willful violation of the automatic stay, if and to the extent deemed appropriate by this Court; and

   (iv) other and further relief in support of the foregoing.

2. The commencement of the Debtor's Chapter 11 case has resulted in the automatic stay of actions against the Debtor. However, the PA Defendants[1] have actively pursued their alleged claims against the Debtor and Triboro in the New Jersey Action despite having actual notice of the Petition Date and also of the applicability of the automatic stay to the New Jersey Action. By the Debtor's motion (the "Motion"), filed on November 3, 2014 prior to the

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to those terms in the Motion. To the extent of any conflict between the terms of the Motion and the terms of this Complaint, the terms of this Complaint shall control.

2

commencement of this adversary proceeding, the Debtor sought entry of an order enforcing the provisions of the automatic stay against the PA Defendants pursuant to Sections 105 and 362 of the Bankruptcy Code. On November 5, 2014, the Court granted the Motion, in part, and issued an order temporarily restraining all parties to the New Jersey Action from further prosecution of all claims and defenses in that action. The Court also ordered the Debtor to initiate the instant adversary proceeding.

3. The continued prosecution of the New Jersey Action will irreparably harm the Debtor by precluding the Debtor from challenging certain judgments or factual findings in subsequent litigation brought by or against the Debtor, may give rise to a claim by the PA Defendants or Triboro against the Debtor that would have an adverse impact on property of the estate, and will burden key employees to the Debtor's reorganization efforts by imposing discovery and other litigation obligations on them. Accordingly, extension of the automatic stay and/or entry of an injunction to enjoin the parties as to all claims in the New Jersey Action is necessary.

## Jurisdiction, Venue and Statutory Predicates

4. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b) and (e).

5. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1408.

7. This adversary proceeding has been brought in accordance with Sections 105(a) and 362 of the Bankruptcy Code and Bankruptcy Rules 7001(7), 7001(9) and 7065.

## The Parties

8. The plaintiff in this adversary proceeding is the Debtor. Substantially all of the Debtor's assets have been and are located in the states of New York, New Jersey and the country of Canada.

9. The Debtor's address, as set forth in the Chapter 11 petition, is 30 Montgomery Street, Suite 604, Jersey City, New Jersey, 07302.

10. Triboro Hardware & Industrial Supply Corp. ("Triboro") a defendant in this adversary proceeding and the plaintiff in the New Jersey Action, is a New Jersey Corporation, with an address at 120 Edward Hart Drive, Jersey City, NJ, 07305.

11. The Port Authority of New York and New Jersey ("Port Authority"), a defendant in this adversary proceeding and a defendant in the New Jersey Action, is a bi-state agency with offices located at 225 Park Ave South, New York, NY 10003 and also at 1 Path Plaza, Seventh Floor, Jersey City, NJ 07306.

12. 1 WTC Holdings, LLC a/k/a 1 World Trade Center, LLC ("1 WTC"), a defendant in this adversary proceeding and a defendant in the New Jersey Action, is a Delaware Limited Liability Company, with offices located at 225 Park Ave South, New York, NY 10003.

13. Tower 5, LLC ("Tower 5" Tower 5, 1 WTC and the Port Authority are collectively referred to herein as, the "PA Defendants"), a defendant in this adversary proceeding and a defendant in the New Jersey Action, is a Delaware Limited Liability Company, with offices located at 225 Park Ave South, New York, NY 10003.

14. Tishman Construction Corp. ("Tishman"), a defendant in this adversary proceeding and a defendant in the New Jersey Action, is a Delaware Corporation, with a principal business address at 100 Park Avenue, New York, New York 10017.

15. The defendants in this adversary proceeding are Triboro, Port Authority, 1 WTC Holdings, Tower 5, and Tishman (collectively, the "Adversary Defendants").

## Background

### A. One World Trade Center Project and Related Vendor Lawsuits

16. On October 17, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

17. Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to operate its business as a debtor-in-possession.

18. The Debtor is preparing and will be negotiating the terms of a proposed plan of reorganization with the Debtor's creditors and other parties in interest over the course of the next several months.

19. Prior to the Petition Date, the Debtor entered into a subcontract with a related entity, Collavino Construction Company Limited ("CCCL") to perform certain work required by CCCL in connection with CCCL's contract with certain of the PA Defendants (the "WTC Contract") to furnish and place concrete for the project known as Tower One of the World Trade Center in New York New York (the "WTC Project").

20. After entering into its subcontract with CCCL, the Debtor entered into a number of subcontracts with trade vendors, including Triboro, to supply the necessary construction materials, industrial supplies and equipment needed by CCCI to perform its work on the WTC Project.

21. The Debtor is currently a defendant in seven (7) lawsuits, including the New Jersey Action, pursuant to which various suppliers and trade vendors have asserted claims

5

against the Debtor in the aggregate amount of approximately $1,000,000 for sums due and owing them for work performed or materials supplied to CCCI on the WTC Project.

### B.    New Jersey State Court Action By Triboro Against CCCI and PA Defendants

22.    The New Jersey Action was commenced by Triboro against CCCI by Complaint duly filed on November 8, 2013.

23.    On January 8, 2014, Triboro filed an Amended Complaint against CCCI, the Port Authority, Tishman, 1 WTC and Tower 5 (the "Amended Complaint").  See Exhibit 1.

24.    On February 14, 2014, CCCI filed its answer (the "CCCI Answer") to the Amended Complaint. In the CCCI Answer, CCCI asserted cross-claims based upon alleged breaches of the WTC Contract against 1 WTC, 1 WTC Holdings, LLC and Tower 5.  See Exhibit 2.

25.    CCCI did not assert a cross-claim against the Port Authority in the CCCI Answer. Id.

26.    On or about March 20, 2014, the Port Authority, 1 WTC, and Tower 5 (collectively, the "PA Defendants") filed its answer (the "PA Defendants' Answer") to Triboro's Amended Complaint.  See Exhibit 3.

27.    Among other things, the PA Defendants admitted in their answer that a 'contract between Collavino [CCCI] and 1 WTC" had existed prior to the Petition Date.  See Exhibit 3, ¶¶ 7, 8, 11, and 35.

28.    The PA Defendants also asserted a cross-claim for indemnity (the "Indemnity Claim") against CCCI in their answer based upon the WTC Contract, asserting that CCCI must indemnify the PA Defendants from all loss or liability incurred by them in the New Jersey Action.  See Exhibit 3, p. 9.

6

29. After filing of the Amended Complaint, the CCCI Answer and the PA Defendants' Answer, the parties did not conduct any discovery regarding the various theories asserted in support of the parties' respective claims and cross-claims in the New Jersey Action.

30. On or about September 2, 2014, the PA Defendants filed a motion for summary judgment against Triboro and the Debtor (the "MSJ"). See Exhibit 4.

31. Pursuant to the MSJ, the PA Defendants sought (i) the dismissal of Triboro's Amended Complaint with prejudice; (ii) the dismissal of CCCI's cross-claims against the Port Authority and Tower 5 with prejudice;[2] and (iii) the dismissal of CCCI's cross claims against 1 WTC without prejudice for failure to comply with a condition precedent to suit. See Exhibit 4.

32. On the Petition Date, the litigation against the Debtor in the New Jersey Action was stayed pursuant to the provisions of the automatic stay of Section 362 of the Bankruptcy Code; however, the PA Defendants continued to actively pursue their claims against the Debtor in the New Jersey Action despite actual notice of the Debtor's bankruptcy filing.[3]

33. On October 24, 2014, Triboro's counsel and CCCI's counsel each sent a letter to the court in the New Jersey Action informing the court of CCCI's bankruptcy filing and the imposition of the automatic stay upon the New Jersey Action. Counsel to the PA Defendants was timely served with copies of the October 24, 2014 letters. See Exhibits 5 and 6 respectively.

34. On October 27, 2014, the PA Defendants' counsel sent a letter to the court in the New Jersey Action asserting, among other things, that the provisions of section 362 of the

---

[2] Although the PA Defendants have sought dismissal of CCCI's alleged cross claim against the Port Authority in the MSJ, as set forth in ¶25 herein, CCCI has not asserted a cross-claim against the Port Authority in the New Jersey Action.

[3] As further set forth herein, on November 5, 2014, this Court issued an Order temporarily enjoining the continuation of the New Jersey Action pending a hearing on the Debtor's request for preliminary and permanent injunctive relief which is currently scheduled to be heard by this Court on November 25, 2014.

7

Bankruptcy Code did not apply to Triboro's claims, or CCCI's cross claims, against the PA Defendants in the New Jersey Action.  See Exhibit 7.

35. On October 29, 2014, Cullen and Dykman LLP ("C&D") sent a letter to the court in the New Jersey Action pursuant to which C&D asserted that the provisions of the automatic stay applied to the New Jersey Action under relevant case law and requested that the court stay the New Jersey Action.  See Exhibit 8.

36. That same day, the PA Defendants' counsel submitted a seven (7) page letter brief to the court in the New Jersey Action in which the PA Defendants again asserted that the provisions of the automatic stay did not apply to the various claims and cross claims in the New Jersey Action and requested that the court move forward on the MSJ against the Debtor.  See Exhibit 8.

37. In its October 29, 2014 letter, counsel to the PA Defendants admitted that the PA Defendants did not dispute that the automatic stay applied to its Indemnity Claim against the Debtor. See Exhibit 8.

38. On October 31, 2014, C&D again submitted a letter to the New Jersey state court restating its opposition to the MSJ on the grounds that the claims at issue therein are stayed by operation of section 362(a) of the Bankruptcy Code and once again requesting that the court not proceed with the scheduled hearing on the MSJ.

39. On November 3, 2014, the Debtor filed the Motion.  After notice and a hearing that day, the Court granted the Motion in certain respects.  In that regard, on November 5, 2014, the Court issued the Order temporarily enjoining the prosecution or defense of all claims in the New Jersey Action.

8

40. The Debtor requires the definitive process offered under the Bankruptcy Code to (i) take advantage of the provisions of the automatic stay regarding the multiple trade vendor lawsuits asserted against CCCI including the New Jersey Action; (ii) enable the Debtor to assess the value and validity of any claims the Debtor may have against the PA Defendants for sums due and owing the Debtor pursuant to the WTC Contract for the WTC Project; (iii) commence as necessary, proceedings against the PA Defendants in the Bankruptcy Court regarding any amounts due and owing CCCI for the WTC Project and (iv) propose and confirm a plan of reorganization that provides for the continuation of the Debtor's business operations and the distribution of certain of its assets for the benefit of its creditors.

## COUNT I

## DECLARATORY RELIEF UNDER SECTION 362(a) OF THE BANKRUPTCY CODE

41. The Debtor repeats and realleges the allegations contained in paragraphs "1" through "40" as if fully set forth herein.

42. The Debtor seeks an order staying the continued prosecution of the New Jersey Action under Sections 362(a)(1) and (a)(3) of the Bankruptcy Code.

43. Section 362(a)(1) of the Bankruptcy Code operates as a stay against "the commencement or continuation…of a judicial…or other proceeding against the debtor" that was commenced before the Petition Date.

44. Accordingly, judicial proceedings against the Debtor to enforce pre-petition financial obligations are barred by the automatic stay under Section 362(a)(1) of the Bankruptcy Code. The New Jersey Action is an example of such a judicial proceeding. Unless stayed, the Adversary Defendants may prosecute their claims against the Debtor, and the Debtor's assets

9

would be obligated to satisfy the resultant liabilities if the Adversary Defendants were successful on their claims.

45. Section 362(a)(3) of the Bankruptcy Code operates as a stay, "applicable to all entities," of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

46. Section 541(a)(1) of the Bankruptcy Code provides that the "estate is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case."

47. Pursuant to Sections 362(a)(3) and 541(a)(1) of the Bankruptcy Code, the automatic stay extends to the claims that have been asserted against parties in the New Jersey Action, including Triboro's direct claims against the Debtor and/or the PA Defendants and the PA Defendants' alleged Indemnity Claim against the Debtor. The Debtor's exposure is broadened by the PA Defendants' alleged Indemnity Claim that arises out of the WTC Contract. The Debtor's rights under the WTC Contract to recover any amounts due and owing the Debtor from the PA Defendants, if any, are also potential assets of the Debtor's estate. Finally, any expenses incurred in the defense of the New Jersey Action by the Debtor would be paid from the Debtor's estate.

48. The Bankruptcy Code provides for a claims process which would include the resolution of claims such as those asserted in the New Jersey Action by Triboro and the PA Defendants against the Debtor. Creditors and all other parties have the opportunity to assert their claims and causes of action in the Bankruptcy Court.

49. Were Triboro, Tishman and the PA Defendants to proceed with their claims against each other while similar claims against the Debtor are automatically stayed under Section

10

362 of the Bankruptcy Code, such claims would have the effect of depleting the Debtor's property pursuant to the Indemnity Claim and undermining the entire purpose for which the Debtor sought relief under the Bankruptcy Code. The Debtor submits that, under these circumstances, the automatic stay of Section 362 of the Bankruptcy Code extends to claims against Triboro, Tishman and the PA Defendants.

50. Based on the foregoing, the Debtor seeks a declaratory judgment extending the automatic stay under Sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code to the continued prosecution of the New Jersey Action.

## COUNT II

### INJUNCTIVE RELIEF UNDER SECTION 105(a) OF THE BANKRUPTCY CODE

51. The Debtor repeats and realleges the allegations contained in paragraphs "1" through "50" as if fully set forth herein.

52. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

53. The Debtor seeks a preliminary injunction staying the continued prosecution of the New Jersey Action under Section 105(a) of the Bankruptcy Code until the effective date of a plan of reorganization or further order of this Court.

54. An injunction of claims against the Protected Parties in the New Jersey Action is necessary to preserve and maximize the Debtor's estate and enable the Debtor to propose and confirm a plan of reorganization that provides for the continuation of the Debtor's business and the distribution of certain assets of the estate for the benefit of its creditors. Those assets include

11

any amounts due and owing to the Debtor for services rendered on the WTC Project for the benefit of the PA Defendants.

55. Pursuant to the broad powers of Section 105(a) of the Bankruptcy Code, and applicable case law, bankruptcy courts have granted injunctions to enjoin claims against non-debtors when non-debtor claims may affect property of the estate and to prevent findings, conclusions or judgments in non-bankruptcy litigation that would prejudice the estate. Accordingly, an injunction should be granted under Section 105(a) of the Bankruptcy Code.

56. The continued litigation of any claims against the Protected Parties will have a direct negative impact on the Debtor's estate. Although claims against the Debtor have been stayed pursuant to Section 362(a) of the Bankruptcy Code, without an injunction, the Adversary Defendants are able to pursue their claims against the Protected Parties in the New Jersey Action. Moreover, the PA Defendants have actively pursued their claims against the Debtor in the New Jersey Action despite actual knowledge of the applicability of the provisions of the automatic stay to that proceeding.

57. The Amended Complaint filed against the Debtor, Tishman and the PA Defendants is based on allegations concerning monies owed by the Debtor to Triboro for construction materials used on the WTC Project for the ultimate benefit of the PA Defendants. Any liability that any of the Protected Parties may face in the New Jersey Action would have to be premised on a finding or a judgment of liability on the Debtor's part or would impact the Debtor's estate because of the PA Defendant's Indemnity Claim. The continued assertion of claims by and against the Adversary Defendants is tantamount to unpermitted litigation against the Debtor.

58. Permitting claims against the Protected Parties to proceed would erode the funds that comprise the principal assets of the Debtor's estate.  If claims based on the Debtor's purported underlying liability are permitted to proceed against the Protected Parties, the Debtor will be at risk that potential adverse judgments against the Protected Parties could be deemed findings against the Debtor.  Such adverse rulings would likely frustrate the Debtor's ability to resolve claims in the chapter 11 cases.

59. Absent an injunction of such claims against the Protected Parties in the New Jersey Action, the Debtor also faces the risk that statements, testimony and other evidence generated in litigation against the Protected Parties could be used against the Debtor in any subsequent litigation between the Debtor and the claimants.

60. Moreover, fact witnesses having knowledge of the Debtor and its business will have to participate in any litigation against the Protected Parties.  Such witnesses are sure to include personnel, who will be forced to expend significant time and attention to litigation in a non-bankruptcy court - which would proceed against the Debtor, but for the automatic stay – which would frustrate both the immediate purpose of Section 362 of the Bankruptcy Code and the ultimate purpose of chapter 11, which is to give the debtor an opportunity to rehabilitate.

61. Section 362(a) also operates as a stay of the commencement or continuation of any action that was or could have been filed against the debtor before the filing of the debtor's petition, or to recover a prepetition claim against the debtor.  11 U.S.C. § 362(a)(1).  Although the express language of Section 362(a)(1) refers only to actions against the debtor, courts have routinely relied on Section 105(a) of the Bankruptcy Code to extend the automatic stay to enjoin actions against non-debtors where the continued prosecution of such actions would undermine the debtor's ability to accomplish the purposes of its chapter 11 case.

62. Here, the Debtor's management plays a critical role in the conduct of the chapter 11 case. The Debtor's management is currently focusing their efforts on dealing with a variety of issues that are vital to the Debtor's efforts to continue their ongoing business operations and to develop and propose a viable plan of reorganization for the ultimate benefit of the estate's creditors. The additional burdens demanded by participation in any litigation against the Debtor or any non-debtor parties in the New Jersey Action would cause irreparable harm to the Debtor and compromise Debtor's management's ability to operate their business and to develop and propose a viable plan of reorganization by diverting the time and attention of Debtor's management from critical tasks. Accordingly, the extension of the automatic stay to enjoin actions against the Protected Parties is appropriate and consistent with the overall goals of the Bankruptcy Code.

63. The Debtor is entitled to preliminary and permanent injunctions under Section 105(a) of the Bankruptcy Code, enjoining the commencement and/or prosecution of claims against the Protected Parties in the New Jersey Action.

## COUNT III

## PRELIMINARY AND PERMANENT INJUNCTIONS UNDER FEDERAL RULE 65

64. The Debtor repeats and realleges the allegations contained in paragraphs "1" through "63" as if fully set forth herein.

65. An injunction may be granted under Federal Rule 65 if the following factors are present: (1) irreparable harm to the movant in the absence of an injunction; (2) either (a) likelihood of success on the merits, or (b) a sufficiently serious question going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the movant; and (3) granting the injunction will serve the public interest.

66. As is manifestly clear from the facts described above, the Debtor will be irreparably harmed without preliminary and permanent injunctions to enjoin the litigation of claims against the Protected Parties in the New Jersey Action. Continued litigation of pending and future claims against the Protected Parties in the New Jersey Action would cause the Debtor's estate to be depleted, substantially diminishing the principal assets with which the Debtor could satisfy the claims held by creditors of the estate.

67. The Debtor is able to satisfy the "likelihood of success" factor, which should be evaluated based on the debtor's "likelihood of a confirming a chapter 11 plan." The Debtor commenced this chapter 11 case to give it a respite from the multiple vendor lawsuits asserted against CCCI until such time as the Debtor received all sums due and owing it for services performed on the WTC Project for the ultimate benefit of the PA Defendants. The Debtor intends to use the funds generated from the Debtor's business operations and the collection of its accounts receivable, which includes sums due and owing the Debtor for services performed on the WTC Project for the benefit of the PA Defendants, to satisfy the claims against the Debtor's estate. Accordingly, the Debtor has a high likelihood of successfully accomplishing the purposes of its chapter 11 case.

68. Granting the preliminary and permanent injunctions will enable the Debtor to continue its pursuits under Chapter 11. The "public interest" is satisfied if granting the injunction would allow the Debtor do so.

69. The Debtor is entitled to preliminary and permanent injunctions under Federal Rule 65 preventing the Adversary Defendants from pursuing the New Jersey Action.

## COUNT IV

## WILLFUL VIOLATION OF STAY

70. The Debtor repeats and realleges the allegations contained in paragraphs "1" through "69" as if fully set forth herein.

71. Under Section 362(k), sanctions may be appropriate for violations of the automatic stay imposed under Section 362(a).

72. The PA Defendants had actual notice of the Petition Date and the applicability of the automatic stay to the New Jersey Action pursuant to the multiple letters submitted to the court in the New Jersey Action. Despite having actual notice of the Debtor's bankruptcy, the PA Defendants actively pursued the continuation of the New Jersey Action on multiple occasions pursuant to which the PA Defendants sought, among other things, to limit the Debtor's remedies against the PA Defendants under the WTC Contract for the WTC Project.

73. To the extent appropriate, sanctions should be imposed against PA Defendants and their representatives, as may be determined by the Court.

74. Judgment should be entered, to the extent appropriate, for sanctions for violation of the automatic stay.

## DEMAND

WHEREFORE, the Debtor respectfully demands judgment as follows:

1. On Count I, a judgment declaring that the automatic stay extends to any and all pending claims and related defenses against the Protected Parties in the New Jersey Action.

2. On Counts II and III, preliminary and permanent injunctions enjoining the further prosecution of the New Jersey Action against the Protected Parties through the effective date of

the Debtor's plan of reorganization or the final adjudication of this adversary proceeding, with the preliminary injunction to be effective pending a permanent injunction;

      3.      On Count IV, sanctions if and to the extent deemed appropriate by this Court; and

      4.      An order granting the Debtor such other and further relief as the Court may deem just and proper.

Dated: Garden City, New York
       November 7, 2014

                                    CULLEN AND DYKMAN LLP

                                    By: */s/ C. Nathan Dee*
                                    Matthew G. Roseman, Esq.
                                    C. Nathan Dee, Esq.
                                    Elizabeth M. Aboulafia, Esq.
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, NY  11530
                                    (516) 357-3700
                                    Proposed Counsel for the Debtor