**Presentment Date and Time: December 3, 2014 at 12:00 p.m.**
**Objection Date and Time: December 1, 2014 at 4:00 p.m.**

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                         :
In re:                                                   :   Chapter 11
                                                         :
COLLAVINO CONSTRUCTION COMPANY INC. :   Case No. 14-12908 (SCC)
                                                         :
                                                         :
                 Debtor.                                 :
                                                         :
-------------------------------------------------------------x

## NOTICE OF PRESENTMENT OF ORDER UNDER BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

**PLEASE TAKE NOTICE** that upon the annexed *Motion for Order Under Bankruptcy Rule 2004 Authorizing Oral Examination of and Production of Documents By the Port Authority of New York and New Jersey* (the "Motion"), filed on behalf of Collavino Construction Company Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), the undersigned will present the attached proposed order to the Honorable Shelley C. Chapman, United States Bankruptcy Judge, for signature on December 3, 2014 at 12:00 p.m. (the "Presentment Date"), at the United States Bankruptcy Court, Courtroom 623, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that responses and objections, if any, to the Motion and the proposed order must be made in writing, conform to the Bankruptcy Rules and the Local Bankruptcy Rules for the Bankruptcy Court and be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (a copy of which can be found at *www.nysb.uscourts.gov*, the official website for the United States Bankruptcy Court for the Southern District of New York), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and shall be served upon: (i) proposed counsel to the Debtor, Cullen and Dykman LLP, Attn:  C. Nathan Dee, Esq. and Elizabeth M. Aboulafia, Esq., 100 Quentin Roosevelt Blvd., Garden City, New York 11530; (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Room 1006, New York, New York 10014, Attn: Andy Velez-Rivera, Esq.; and (iii) all parties who have filed a notice of appearance and request for service of documents, so as to be actually received by no later than 4:00 p.m. (prevailing Eastern Time) on December 1, 2014 (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if no objection has been properly filed, served and received by the Objection Deadline, the Bankruptcy Court may sign the proposed order on the Presentment Date without a hearing.  In the event one or more objections to the Motion and proposed order are timely served and filed, and such objection(s) are not withdrawn or otherwise resolved before the Presentment Date, the Bankruptcy Court will schedule a hearing on notice to the appropriate parties.

Dated:  Garden City, New York
         November 19, 2014

                              CULLEN AND DYKMAN LLP


                              By: *s/  C. Nathan Dee*
                              Matthew G. Roseman, Esq.
                              C. Nathan Dee, Esq.
                              Elizabeth M. Aboulafia, Esq.
                              100 Quentin Roosevelt Boulevard
                              Garden City, NY  11530
                              (516) 357-3700

                              Proposed Counsel for the Debtor

CULLEN & DYKMAN LLP
100 Quentin Roosevelt Boulevard
Garden City, NY 11530
(516) 357-3700
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.

Proposed Counsel for Collavino Construction Company Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
In re:                                                      :   Chapter 11
                                                            :
COLLAVINO CONSTRUCTION COMPANY INC. :   Case No. 14-12908 (SCC)
                                                            :
                                                            :
                    Debtor.                                 :
                                                            :
-------------------------------------------------------------------x

## MOTION FOR ORDER UNDER BANKRUPTCY RULE 2004 AUTHORIZING ORAL EXAMINATION OF AND PRODUCTION OF DOCUMENTS BY THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

Collavino Construction Company Inc., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys Cullen and Dykman LLP, hereby submits this motion (the "Motion") pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") for entry of an order (a) directing The Port Authority of New York and New Jersey (the "Port Authority) to produce to the Debtor documents responsive to the Requests for Production annexed hereto as Exhibit "A" (the "Document Request"), and (b) authorizing the Debtor to issue subpoenas to conduct oral examinations (the "Oral Examinations") of certain individuals employed by the Port Authority as set forth more fully herein. The proposed subject matter of the testimony of the individuals

sought to be examined by the Debtor is set forth in more detail on Exhibit "B" attached hereto. In support of this Motion, the Debtor respectfully states as follows:

## INTRODUCTION

1.    On October 17, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

2.    The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.    No request for the appointment of a trustee or examiner has been made in this chapter 11 case.  An official committee of unsecured creditors has not yet been appointed by the Office of the United States Trustee for the Southern District of New York in this chapter 11 case.

4.    Simultaneously with the filing of its petition, the Debtor filed the Affidavit of Renzo Collavino pursuant to Local Bankruptcy Rule 1007-2 (the "Collavino Affidavit") (Docket No. 2).  A detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of this chapter 11 case, is more fully set forth in the Collavino Affidavit and incorporated herein by reference.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6.    The statutory predicates for the relief sought herein are Bankruptcy Rules 2004 and 9016, Local Rule 2004-1 and Rule 45 of the Federal Rules of Civil Procedure.

## BACKGROUND

I.    The Debtor Subcontracts to Provide Labor on the WTC Project

7.    Prior to the Petition Date, the Debtor had entered into a subcontract (the "CCCI Subcontract") with a related entity, Collavino Construction Company Limited ("CCCL"), to provide all necessary labor required by CCCL in connection with CCCL's contract (the "WTC Contract") with the Port Authority and/or an entity wholly owned by the Port Authority to furnish and place concrete for the project known as the Reconstruction of One World Trade Center – Freedom Tower (the "WTC Project").

8.    In turn, the Debtor entered into contracts with approximately fifty (50) trade vendors to supply the necessary construction materials, industrial supplies and equipment and provide other construction services to CCCI on the WTC Project.

9.    As a result of, among other things, delays to the progress of work caused by conditions beyond the control of CCCL and the Debtor, and the Port Authority's unilateral election to terminate the WTC Contract with CCCL for convenience, effective as of January 18, 2013, CCCL incurred a multi-million dollar damage claim against the Port Authority on the WTC Project (the "WTC Claim").  On May 3, 2013, CCCL delivered a multi-volume claim submission to the Port Authority which set forth the various components of the WTC Claim (the "Claim Submission").

10.    Correspondingly, the Debtor is owed approximately $6.2M from CCCL for its unpaid labor costs and related damages on the WTC Project, which sums are included within the amounts that CCCL is seeking to recover from the Port Authority as part of the WTC Claim.

11.    The $6.2M in funds due and owing the Debtor from CCCL as part of the WTC Claim is the primary asset of the Debtor's estate and will provide a source of funds to be distributed to the Debtor's creditors pursuant to a plan of reorganization.

II.    The Debtor Seeks Chapter 11 Protection to Obtain Relief from Vendor Suits While Pursuing Recovery on the WTC Claim

12.    The Debtor filed its chapter 11 bankruptcy case because it is a defendant in seven (7) lawsuits pursuant to which various suppliers and trade vendors who provided the Debtor with industrial supplies and materials on the WTC Project have asserted claims against the Debtor in the aggregate amount of approximately $1,000,000.

13.    The time and expense associated with defending the vendor lawsuits was hampering the Debtor's business operations and, as a result, on the Petition Date, the Debtor filed its chapter 11 bankruptcy case.

14.    The Debtor's liabilities in this chapter 11 case are comprised primarily of trade debt due and owing to vendors that subcontracted with the Debtor or supplied materials to the Debtor during the pendency of the WTC Project. The claims held by these trade vendors arising out of the WTC Project comprise the overwhelming majority of the Debtor's unsecured debt obligations. Substantially all of the trade vendor claims asserted against the Debtor were included as part of the Claim Submission for the WTC Claim that was delivered to the Port Authority by CCCL on or about May 3, 2013.

15.    The Debtor intends to continue operating and to file a plan of reorganization through which it will repay any valid claims asserted by its trade vendors arising out of the WTC Project and any other creditors so that it may continue providing labor to its affiliated entities on future construction projects. Any chapter 11 plan of reorganization proposed in this case would

be premised on the Debtor's recovery of its portion of the proceeds of the WTC Claim to which it is entitled once CCCL's claim resolution process with the Port Authority has been completed.

16.    Accordingly, to ensure that its chapter 11 plan of reorganization is viable and capable of passing muster under the requirements of section 1129 of the Bankruptcy Code, the Debtor seeks to use the broad powers of Bankruptcy Rule 2004 to perform certain necessary due diligence relating to the WTC Claim as against the Port Authority.

III.    The Debtor Seeks to Use Bankruptcy Rule 2004 to Perform the Requisite Due Diligence Regarding the WTC Claim to Determine if WTC Claim is a Viable Source of Funds For its Plan of Reorganization

17.    Before it can in good faith propose a chapter 11 plan of reorganization premised on recovery of the WTC Claim, the Debtor submits that it must perform further due diligence to confirm that the proceeds of the WTC Claim are a viable source of funds for its anticipated plan of reorganization.    Accordingly, the Debtor seeks to use the broad examination powers of Bankruptcy Rule 2004 to (i)  obtain a better understanding of the valuation of the WTC Claim and, in particular, the portion of that claim that it is entitled to recover for unpaid labor costs and unpaid amounts due and owing to its trade vendors; and (ii) gather additional information regarding the likelihood of recovery on the WTC Claim, which information would be required to make a "feasibility" showing under section 1129(a)(11) of the Bankruptcy Code.

18.    The Debtor therefore submits that the Document Request proposed to be served on the Port Authority and the proposed Oral Examinations of two (2) individuals employed by the Port Authority pursuant to Bankruptcy Rule 2004 are necessary and appropriate in this case.

**RELIEF REQUESTED**

19.    The Debtor requests authority under Bankruptcy Rule 2004 to (a) serve the Document Request attached hereto as Exhibit A on the Port Authority and (b) conduct the Oral

Examinations of two (2) individuals employed by the Port Authority regarding the subject matter set forth on Exhibit B. The Debtor submits that the issuance of an Order, substantially in the form annexed hereto as Exhibit C, authorizing the Debtor to serve the Document Request and issue the subpoenas is authorized under Bankruptcy Rule 2004 and is appropriate in this case for the reasons set forth herein.

## BASIS FOR RELIEF REQUESTED

20. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity" as well as the production of documents by such entity. *See* FED. R. BANKR. P. 2004(a). Bankruptcy Rule 2004(b) sets forth the permissible scope of an examination, stating in relevant part as follows:

> The examination of an entity under this rule . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . .

*See* FED. R. BANKR. P. 2004(b).

In addition, in a chapter 11 reorganization:

> [T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

*See* FED. R. BANKR. P. 2004(b).

21. It is well settled that the scope of a Rule 2004 examination is "broad and unfettered and in the nature of a fishing expedition", as the language of the rule indicates. *See In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002). Indeed, it is far broader than the scope of discovery under Rule 26 of the Federal Rules of Civil Procedure. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991).

22.   Rule 2004 examinations may be used by a party to evaluate the existence of the availability of assets of the estate. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994); *In re Almatis B.V.*, 2010 Bankr. LEXIS 4243, at *10 (Bankr. S.D.N.Y. Nov. 24, 2010) ("The purpose of a Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets, examining transactions and assessing whether wrongdoing has occurred"); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) ("The purpose of a Rule 2004 examination is 'to show the condition of the estate and to enable the Court to discover its extent and whereabouts, and to come into possession of it, that the rights of the creditor may be preserved'").

23.   In addition, Rule 2004 examinations may be used by a party to evaluate the existence of potential claims belonging to a debtor's estate, primarily because claims of the debtor are considered assets of the estate. *See, e.g.*, *In re Table Talk, Inc.*, 51 B.R. 143, 146 (Bankr. D. Mass. 1985).

24.   Bankruptcy courts are required to make a finding of good cause for the examination in approving a request for a Rule 2004 examination. *See Coffee Cupboard*, 128 B.R. at 514. Good cause has been held to be shown where "the examination sought 'is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice.'" *In re Madison Williams and Company, LLC*, 2014 Bankr. LEXIS 50, at *10 (Bankr. S.D.N.Y. Jan. 7, 2014) (internal citations omitted); *In re MF Global Inc.*, 2013 Bankr. LEXIS 129, at *3 (Bankr. S.D.N.Y. Jan. 8, 2013) (same). In evaluating a request for a Rule 2004 examination, bankruptcy courts "balance the compelling interests of

7

the parties, weighing the relevance of and necessity of the information sought by examination".
*Coffee Cupboard*, 128 B.R. at 514, *Madison Williams*, 2014 Bankr. LEXIS 50, at *11.

25.    The Debtor believes that the Port Authority possesses documents that are responsive to one or more of the Document Requests. Additionally, upon information and belief, the individuals proposed to be subject to Oral Examination possess knowledge concerning the subject matter of the proposed Oral Examinations including, but not limited to, the WTC Contract, the WTC Project and the WTC Claim.

## THE INFORMATION SOUGHT IN THE DOCUMENT REQUEST AND THROUGH THE ORAL EXAMINATIONS IS WITHIN THE PERMISSIBLE SCOPE OF BANKRUPTCY RULE 2004

26.    The Debtor submits that the information sought in the Document Requests and the proposed Oral Examination are within the permissible scope of Bankruptcy Rule 2004 because the requested information clearly relates to "the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan" and "any other matter relevant to . . . the formulation of a plan" within the meaning of Bankruptcy Rule 2004(b).

27.    In this case, the valuation and collectability of the WTC Claim is undoubtedly relevant to the source of plan funding and the formulation of the Debtor's chapter 11 plan of reorganization because without additional information regarding the valuation of the claim and its anticipated collectability, the Debtor is unable to determine whether its proposed course in this chapter 11 case is indeed viable. *See In re Roman Catholic Church of the Diocese of Gallup*, 513 B.R. 761, 765 (Bankr. D. N.M. 2014) (granting request for Rule 2004 exam as to the financial condition of a third party because "[t]he collectability of an estate claim against a third party appears to be a matter 'relevant to the case or to the formulation of a plan'" and finding the

proposed examination to be "especially relevant" where "the Debtor proposes to use any claim proceeds to fund the plan").

28.   Moreover, the Port Authority is the proper subject of an examination under Bankruptcy Rule 2004 based upon its relationship to the Debtor arising out of the WTC Contract. *See In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004) ("Any third party who has a relationship with a debtor may be made subject to a Rule 2004 examination").  As the entity that controls the disbursement of any funds to be paid to CCCL in satisfaction of the WTC Claim, the Debtor submits that it is entitled under Bankruptcy Rule 2004 to conduct an examination of, and request the production of documents by, the Port Authority because the Port Authority's assessment of the valuation and merits of the WTC Claim is relevant to the Debtor's ability to confirm a chapter 11 plan of reorganization.

29.   Accordingly, through the Document Request, the Debtor seeks certain targeted information from the Port Authority related to the WTC Claim.  Among other things, the Debtor seeks information concerning the Port Authority's review and evaluation of the Claim Submission to ascertain the Port Authority's valuation of the WTC Claim.  In addition, the Debtor seeks information regarding the Port Authority's assessment of the merits of the WTC Claim by probing into the various components of the WTC Claim.

30.   Similarly, the Debtor seeks to conduct examinations of two (2) Port Authority Employees for the purposes of obtaining information regarding the Port Authority's recognition of CCCL and the Debtor's entitlement to recover the WTC Claim, their evaluation of the merits of the WTC Claim, as well as the Debtor and CCCL's entitlement to recoup various cost categories that comprise the WTC Claim.

31.    For the foregoing reasons, the Debtor submits that the information sought from the Port Authority in the Document Request and through the Oral Examinations is well within the permissible scope of a Bankruptcy Rule 2004 examination because it is directly relevant to the valuation and viability of the WTC Claim, the proceeds of which constitute the Debtor's primary asset and source of funding for a chapter 11 plan of reorganization.

## NOTICE

32.    Notice of this Motion has been given to (a) the United States Trustee for the Southern District of New York; (b) the Port Authority and its counsel; and (c) all persons who have filed notices of appearance in this case.  The Debtor submits that, under the circumstances, no other or further notice is required.

## CONCLUSION

33.    Based on the foregoing, the Debtor requests that the Court enter an order (a) directing the Port Authority to produce to the Debtor documents responsive to the Document Request, (b) authorizing the Debtor to issue subpoenas and conduct the Oral Examinations, and (c) granting such other and further relief as may be just and proper under the circumstances.

34.    As this Motion presents no novel issue of law, the Debtor respectfully requests that the Court waive the requirement of a separate memorandum of law.

35.    No prior request has been made to this or any other Court for the relief sought herein.

WHEREFORE, the Debtor requests that the Court grant the Motion and enter an Order, substantially in the form annexed hereto as Exhibit C, (a) directing the Port Authority to produce to the Debtor documents responsive to the Document Request, (b) authorizing the Debtor to issue and conduct the Oral Examinations, and (c) granting such other and further relief as may be just and proper under the circumstances.

Dated: Garden City, New York
November 19, 2014

CULLEN AND DYKMAN LLP

By: /s/
Matthew G. Roseman, Esq.
C. Nathan Dee, Esq.
Elizabeth M. Aboulafia, Esq.
100 Quentin Roosevelt Boulevard
Garden City, NY  11530
(516) 357-3700

Proposed Counsel for the Debtor

11

## EXHIBIT A

## DOCUMENT REQUEST

The Port Authority is requested to produce the following documents for inspection and copying at the offices of Cullen and Dykman LLP, located at 100 Quentin Roosevelt Blvd., Garden City, New York 11530:

## I.

## INSTRUCTIONS

1.      Each of these requests for production of documents shall be deemed to be a request for all such documents, whether prepared by or for you by any other party or any other person, which documents are in your possession, custody or control or in the possession, custody or control of your attorneys, accountants, consultants, employees, agents, or anyone acting on your behalf.

2.      As to any document you are withholding from production on the basis of a privilege, you are to provide the following information to specifically identify the document:

    (i)      title or description,

    (ii)     date,

    (iii)    author,

    (iv)     recipient(s),

    (v)      number of pages,

    (vi)     subject matter, and

    (vii)    the specific grounds for withholding the document.

3.      You are required to produce documents as they are kept in the usual course of business or to organize and label them to correspond to the categories in this request. Documents should be produced in their native format.

4.      You are required to produce complete documents, including all drafts of any such documents.

5.      Any comments, notes, or signatures appearing on any documents, and not a part of the original, are to be considered a separate document, and any draft, preliminary form, or superseded version of any document is also to be considered a separate document, which you are also required to produce.

6.      If any of the requested documents cannot be produced in full, you are to produce said documents to the extent possible, specifying your reasons for your inability to produce the remainder and stating what information, knowledge, or belief you have concerning the unproduced portion.

7.      Unless otherwise stated, the time period applicable to this set of document requests is from January 1, 2010 to the present.

## II.

### DEFINITIONS

A.      <u>All/Any/Each.</u>   The terms "all", "any" and "each" shall each be construed as encompassing any and all.

B.      <u>And/Or.</u>   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive, and bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

C.      <u>Communication.</u>    The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

D.    Document.  The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Bankr. P. 2004 and Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

E.    Including.  The term "including" means "including but not limited to."

F.    Item.  The term "item" means any physical thing.

G.    Number.    The use of the singular form of any word includes the plural and vice versa.

H.    Person.  The term "person" is defined as any natural person or business, legal or governmental entity or association.

I.    Parties.    The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

J.    Concerning.  The term "concerning" means relating to, referring to, describing, evidencing or constituting.

K.    Writings.  The term "writings" shall include any handwriting, typewriting, printing, Photostatting, photographing, and every other means of recording upon any tangible thing, and form of communicational representation, including letters, words, pictures, sounds, or symbols, or combinations thereof.

L.    Contract.  The term "Contract" means the WTC Contract No. WTC-1001.04-1 for the WTC Project.

M.    WTC Project.  The term "WTC Project" shall mean the Below Grade and Above Grade Concrete for the One World Trade Center-Freedom Tower.

3

N.    Claim Submission.    The term "Claim Submission" shall mean the fully documented global, multi-volume claim submission presented by Collavino to the Port Authority dated on or about May 3, 2013.

O.    CCCL. The term "CCCL" shall mean Collavino Construction Company, Limited.

P.    CCCI. The term "CCCI" shall mean the debtor or Collavino Construction Company, Inc.

Q.    Collavino. The term "Collavino" shall mean CCCL and CCCI collectively.

R.    Plate. The term "Plate" refers to Steven Plate, Director of the World Trade Center Construction, Port Authority.

S.    O'Connor. The term "O'Connor refers to Thomas O'Connor, Deputy Director of the World Trade Center Construction, Port Authority.

T.    Riedl. The term "Riedl" shall mean Christopher Riedl, Project Manager for Tishman Construction Corp.

U.    Tollner. The term "Tollner" shall refer to Lynda Tollner, a former manager for the Port Authority who was directly involved with Collavino and the administration of the Contract.

V.    Tishman. The term "Tishman" shall mean the Tishman Construction Corp.

W.    Ruffini. The term "Ruffini" shall refer to Mel Ruffini, the executive president of Tishman who oversaw Tishman's management of the WTC Project.

X.    Port Authority.  The term "Port Authority" shall mean the Port Authority of New York and New Jersey with a business address located at 225 Park Avenue South, New York, NY 10003.

## III.

## DOCUMENT REQUESTS

1.    The evaluations, reports, analyses and other similar documents prepared by or for the Port Authority, commenting on, analyzing or evaluating the Claim Submission concerning Collavino's outstanding, unresolved commercial issues, claims and/or disputes related to  the Contract.

2.    The reports, financial reviews, audits, evaluations and other similar documents prepared by Tishman concerning the Port Authority's decision to cancel the Contract effective January 18, 2013.

3.    The claims evaluations, reviews and other similar documents prepared by or for the Port Authority's Claims Group concerning the Claim Submission.

4.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Plate concerning the Claim Submission.

5.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to O'Connor concerning the Claim Submission.

6.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Tollner concerning the Claim Submission.

7.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Riedlconcerning any "Supplemental Funding" or "Supplemental

Assistance" Change Order issued to Collavino by the Port Authority in connection with the Contract.

8.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Plate concerning any "Supplemental Funding" or "Supplemental Assistance" Change Order issued to Collavino by the Port Authority in connection with the Contract.

9.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to O'Connor concerning any "Supplemental Funding" or "Supplemental Assistance" Change Order issued to Collavino by the Port Authority in connection with the Contract.

10.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Tollner concerning any "Supplemental Funding" or "Supplemental Assistance" Change Order issued to Collavino by the Port Authority in connection with the Contract.

11.    The emails, memos, correspondence and other writings authored by, or addressed or copied or distributed to Ruffini concerning any "Supplemental Funding" or "Supplemental Assistance" Change Order issued to Collavino by the Port Authority in connection with the Contract.

12.    The memoranda, emails, surveys, inventory lists, reports, photographs and other similar documents prepared by or for the Port Authority which record or memorialize the equipment, supplies, materials, tools and other construction related items belonging to, being used by, or in the custody of, Collavino, which remained at the Tower One, World Trade Center construction site after Collavino demobilized and left the site on or about January 18, 2013.

13.    The records, documents, payment vouchers and other similar writings prepared by or for the Port Authority concerning the total amount that was paid to Collavino by the Port Authority for the Above Grade Concrete Work.

14.    The emails, memoranda, correspondence and other similar writings prepared by or for the Port Authority concerning  payment to Collavino for premium time costs incurred by Collavino from March 1, 2010 to September 23, 2010.

15.    The records, emails, reports, memoranda, evaluations or surveys prepared by or for the Port Authority concerning the "extra work" represented by or included in each of the "Supplemental Funding" or "Supplemental Assistance" Change Orders issued by the Port Authority to Collavino with regard to the Above Grade Concrete Work performed by Collavino, pursuant to the Contract.

16.    The internal reports prepared by or for the Port Authority (including without limitation reports received from Tishman) concerning projected costs of the Above Ground Concrete Work and/or the projected funding needs for this work.

17.    The documents (including, without limitation, emails) concerning requests made by subcontractors and suppliers of Collavino for payment for materials, labor, equipment and services furnished in connection with the Contract.

18.    The documents (including, without limitation, emails) concerning the balances claimed to be due by Collavino for materials, labor, equipment and services provided in connection with the Contract.

19.    The documents (including, without limitation, emails) concerning the evaluation, audit or assessment by the Port Authority, Tishman, or any other person of the amount due to

Collavino for materials, labor, equipment, premium time and services provided in connection with the Contract.

20.     The documents (including, without limitation, emails) concerning the evaluation, audit or assessment by the Port Authority, Tishman, or any other person of the amount due to any subcontractors and suppliers of Collavino for materials, labor, equipment, premium time and services provided in connection with the Contract.

21.     The time impact analysis prepared by or for the Port Authority or Tishman concerning each of the following enumerated "Supplemental Assistance" Change Orders.

| CO # | Total | Date Issued by PA |
|------|-------|-------------------|
| 177 | $7,000,000.00 | 9/12/2011 |
| 181 | $7,000,000.00 | 11/4/2011 |
| 182 | $5,254,002.00 | 12/6/2011 |
| 192 | $1,050,000.00 | 2/7/2012 |
| 194 | $(1,050,000.00) | 2/28/2012 |
| 203 | $2,000,000.00 | 4/17/2012 |
| 205 | $7,582,203.00 | 5/10/2012 |
| 212 | $7,404,031.00 | 6/14/2012 |
| 216 | $6,879,194.00 | 7/10/2012 |
| 219 | $6,380,570.00 | 8/10/2012 |
| 224 | $8,450,548.00 | 9/21/2012 |
| 225 | $1,848,863.00 | 10/12/2012 |
| 235 | $2,324,739.00 | 11/30/2012 |
| 238 | $3,600,000.00 | 12/11/2012 |
| 239 | $1,220,000.00 | 1/23/2013 |

22.     The resolutions of the Port Authority's Board of Directors concerning  the funding or allocation of money for the aforesaid "Supplemental Assistance" Change Orders.

23.     The written communications between Tishman and 1 WTC LLC (a/k/a "Tower 5, LLC") and/or the Port Authority concerning the "Supplemental Assistance" Change Orders.

24.     The written communications between Tishman and Tower 5, LLC and/or the Port Authority, authored between January 1, 2011 and June 30, 2013, concerning the estimated or projected costs to complete the Contract.

## EXHIBIT B

## SUMMARY OF ORAL EXAMINATIONS

| Name | Title/Employer | Subject Matter of Examination |
|---|---|---|
| Steven Plate | Director, World Trade Center Construction, Port Authority of New York and New Jersey | The Debtor seeks an Oral Examination of Mr. Plate because Mr. Plate was directly involved with the WTC Contract and the construction of the WTC Project. Mr. Plate was personally involved with the decision to fund CCCL's above-grade concreting operations and it is believed that he authorized payment of CCCL's and the Debtor's job related payables, including vendor payables. Upon information and belief, Mr. Plate was also involved in the decision to withhold payment to CCCL and the Debtor's vendors at or around the time that the WTC Contract was terminated for convenience.<br><br>Upon information and belief, Mr. Plate has knowledge of facts relevant to the following critical issues which the Debtor believes are vital to determining the value of the WTC Claim:<br><ul><li>The Debtor's and CCCL's performance of their obligations under the WTC Contract;</li><li>The Port Authority's significant changes in the scope of above-grade concrete work, inclusion of significant additional scope, as well as its ordering CCCL and the Debtor to accelerate work and its responsibility for changing the conditions under which CCCL and the Debtor were compelled to perform;</li><li>The Port Authority's conversion of the WTC Contract to a "cost plus" arrangement to induce CCCL and the Debtor to continue performing concrete operations and the Port Authority's commitment to pay CCCL and the Debtor's job costs including, without limitation, trade payables, general conditions and a markup;</li><li>The Port Authority's decision to cease funding CCCL and the Debtor's concreting operations and its termination of the WTC Contract for convenience effective as of January 18, 2013;</li><li>The nonpayment of amounts that the Port Authority was</li></ul> |

| Name | Title/Employer | Subject Matter of Examination |
|---|---|---|
| | | contractually obligated to pay to CCCL to enable it to make payment to the Debtor and its trade vendors, as well as for direct job costs and demobilization costs. |
| Thomas O'Connor | Deputy Director, World Trade Center Construction, Port Authority of New York and          New Jersey | The Debtor seeks an Oral Examination of Mr. O'Connor because Mr. O'Connor was directly involved with the overall supervision and construction of the WTC Project.  Mr. O'Connor was consulted and consulted with Mr. Plate and others in connection with requesting funding from the Port Authority's Board of Directors to pay the costs incurred by CCCL to execute its above-grade concreting operations.  Mr. O'Connor was also involved with monitoring cash flow requirements and directing adjustments to CCCL and the Debtor's manpower levels to ensure that adequate funding was in place to finance their operations.<br><br>Upon information and belief, Mr. O'Connor has knowledge of facts relevant to the following critical issues which the Debtor believes are vital to determining the value of the WTC Claim:<br>• The Port Authority's unilateral decision to terminate the WTC Contract for convenience as a business decision motivated by the decision to complete the remaining concrete work pursuant to a lump sum contract;<br>• The Debtor's and CCCL's performance of their obligations under the WTC Contract and overcoming obstacles related to the performance of work on the WTC Project;<br>• The Debtor's and CCCL's demobilization costs associated with the termination of the WTC Contract for convenience;<br>• The insufficiency of the existing contract balance to be paid to CCCL to fund the costs of the remaining concrete operations due to changes, adjustments and shortages caused by additional scope of work, changes in the scope of work and unforeseen conditions;<br>• The Port Authority's close monitoring of CCCL and the Debtor's projected and actual costs so that it could fund their cash flow needs for labor, general conditions, trade vendor and other job |

| Name | Title/Employer | Subject Matter of Examination |
|---|---|---|
| | | payables and expenses and advance the progress of construction; <br> • The Port Authority's representation to CCCL and the Debtor that if they proceeded with concreting operations, the Port Authority would make them whole and ensure that they were not proceeding at risk; <br> • The Port Authority's decision to cease funding CCCL and the Debtor's operations although additional funding was required to fulfill its commitments. |

## EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                        :

In re:                          :   Chapter 11

                          :

COLLAVINO CONSTRUCTION COMPANY INC. :   Case No. 14-12908 (SCC)

                          :

          Debtor.             :

                          :
-------------------------------------------------------------------x

### ORDER UNDER BANKRUPTCY RULE 2004
### AUTHORIZING ORAL EXAMINATION OF AND PRODUCTION OF
### DOCUMENTS BY THE PORT AUTHORITY OF NEW YORK AND NEW JERSEY

Upon the motion (the "Motion")[1] of Collavino Construction Company Inc., the above-
captioned debtor and debtor-in-possession (the "Debtor"), by and through its proposed attorneys
Cullen and Dykman LLP, pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy
Procedure and Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York
for entry of an order (a) directing The Port Authority of New York and New Jersey (the "Port
Authority) to produce to the Debtor documents responsive to the Requests for Production annexed
to the Motion as Exhibit "A" (the "Document Request"), and (b) authorizing the Debtor to issue
subpoenas to conduct oral examinations of certain individuals employed by the Port Authority as
set forth more fully in the Motion; and the Court being satisfied that the relief sought in the Motion
is appropriate under the circumstances; and good and sufficient cause appearing for the entry of this
Order; it is hereby

**ORDERED**, that the relief requested in the Motion is granted; and it is further

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

**ORDERED**, that the Debtor is hereby authorized to serve a copy of this Order, together with the Document Request annexed to the Motion as Exhibit "A" upon the Port Authority via overnight mail within three (3) days of entry of this Order; and it is further

**ORDERED**, that the Port Authority shall produce the documents set forth in the Document Request to counsel to the Debtor, Cullen and Dykman LLP, 100 Quentin Roosevelt Boulevard, Garden City, New York 11530, Attention: Nathan Dee, Esq. and Elizabeth M. Aboulafia, Esq., within thirty (30) days of service of the Document Request; and it is further

**ORDERED**, that the Debtor is hereby authorized to serve a copy of this Order, together with a subpoena, upon each person to whom subpoena is directed via overnight mail within three (3) days of entry of this Order; and it is further

**ORDERED**, that each person served with a subpoena shall appear for examination at the time and place specified in the subpoena; and it is further

**ORDERED**, that the Court shall retain jurisdiction to hear and determine any dispute arising out of this Order.

Dated: December ____, 2014
        New York, New York

                                              _____
                                              THE HONORABLE SHELLEY C. CHAPMAN
                                              UNITED STATES BANKRUPTCY JUDGE